# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

GARFIELD PATTERSON.

No. 3:21-cr-103 (VAB)

## RULING AND ORDER ON MOTIONS IN LIMINE

Garfield Patterson ("Mr. Patterson") is charged with reentry by a noncitizen who was previously removed from the United States, in violation of 8 U.S.C. § 1326. *See* Indictment, ECF No. 1 (June 15, 2021). In advance of trial, Mr. Patterson and the Government have each filed motions *in limine* to preclude or limit certain types of evidence. *See* Government Omnibus Mot. in Limine, ECF No. 61 (October 12, 2022) ("Gov.'s Mot."); Def.'s Mot. in Limine, ECF No. 69 (October 12, 2022) ("Def.'s Mot.").[1]

For the following reasons, the Government's motion *in limine* is **GRANTED in part** and **DENIED in part** without prejudice to renewal.

Mr. Patterson's motion *in limine* is **GRANTED in part** and **DENIED in part** without prejudice to renewal**.**

---

[1] Mr. Patterson has filed five additional motions seeking to preclude or limit various evidence the government intends to introduce. *See* Def.'s Mot. to Bar Testimony of Fingerprint Technician, America Pupo Perez, ECF No. 74 ("Perez Mot."); Def.'s Suppl. Mot. to Bar Testimony of Fingerprint Technician, America Pupo Perez, ECF No. 79 ("Perez Suppl. Mot."); Def.'s Objection to Mot. to Sequester Witnesses, ECF No. 76 ("Seq. Mot."); Def.'s Objection to Mot. to Admit Fingerprint Cards under Business Records Hearsay Exception, ECF No. 77 ("Bus. R. Mot."); Def.'s Mot. in Limine to Exclude References to Hearsay Material, ECF No. 115 ("Fitzgerald Mot."). Although styled as motions, these filing are mainly objections to various sections of the Government's omnibus motion. Accordingly, the Court will address those motions in this Ruling.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

According to the allegations of the indictment, Mr. Patterson is a noncitizen who was convicted in February 2000 in Florida state court of cannabis trafficking and possession of an unlawfully issued driver's license. *See* Indictment at 1. Following these convictions, Mr. Patterson was allegedly deported to Jamaica. *Id.* "[H]aving previously been deported and removed from the United States to Jamaica following [the] felony conviction in the State of Florida," Mr. Patterson was allegedly present in Middletown, Connecticut, in June 2019 without having first obtained the express consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States. *Id.*

### B.  Procedural History

On June 15, 2021, a grand jury returned an indictment charging Mr. Patterson with one count of violating 8 U.S.C. § 1326(a) and (b)(1). *See* Indictment.

On June 23, 2022, Mr. Patterson filed a motion to dismiss the indictment. *See* Def.'s Mot. to Dismiss the Indictment, ECF No. 42.

On October 12, 2022, the Government filed an opposition to Mr. Patterson's motion. *See* Government's Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Indictment, ECF No. 57 ("Opp'n"). Mr. Patterson filed a reply in support of his motion on October 27, 2022. *See* Def.'s Reply to Government's Opp'n, ECF No. 84 ("Reply").

On October 12, 2022, the Government filed an omnibus motion *in limine*. *See* Gov.'s Mot. On the same day, the Mr. Patterson filed his omnibus motion *in limine*. *See* Def.'s Mot.

On October 13, 2022, Mr. Patterson filed a motion to suppress the statements he made to Middletown Police Officers. *See* Def.'s Mot. to Suppress Statements, ECF No. 78.

On the same day, Mr. Patterson filed four additional motions related to the Government's omnibus motion *in limine*. *See* Def.'s Mot. to Bar Testimony of Fingerprint Technician, America Pupo Perez, ECF No. 74 ("Perez Mot."); Def.'s Suppl. Mot. to Bar Testimony of Fingerprint Technician, America Pupo Perez, ECF No. 79 ("Perez Suppl. Mot."); Def.'s Objection to Mot. to Sequester Witnesses, ECF No. 76 ("Seq. Mot."); Def.'s Objection to Mot. to Admit Fingerprint Cards under Business Records Hearsay Exception, ECF No. 77 ("Bus. R. Mot.").

Also on October 13, 2022, the Government filed its opposition to Mr. Patterson's motions *in limine*. Gov.'s Mem. in Opp'n to Def.'s Mots. in Limine, ECF No. 75 ("Gov.'s Opp'n").

On November 4, 2022, the Government filed its opposition to Mr. Patterson's motion to suppress. *See* Government's Opp'n to Mot. to Suppress, ECF No. 87.

On November 11, 2022, Mr. Patterson filed a reply in further support on his motion to suppress. *See* Def.'s Reply, ECF No. 88.

On December 19, 2022, the Court held oral arguments on Mr. Patterson's motion to suppress. *See* Min. Entry, ECF No. 97.

On January 3, 2023, the Government filed a supplemental memorandum in opposition to the Mr. Patterson's motion to suppress. *See* Government's Suppl. Mem. in Opp'n to Def.'s Mot. to Suppress, ECF No. 101.

On January 10, 2023, Mr. Patterson filed a response to the Government's supplemental memorandum. *See* Def.'s Suppl. Reply, ECF No. 105.

On January 20, 2023, the Court issued a ruling denying Mr. Patterson's motion to dismiss. *See* Order, ECF No. 106. On the same day, the Court issued a ruling denying Mr. Patterson's motion to suppress. *See* Order, ECF No. 107.

On February 8, 2023, the Government filed a notice indicating that it intends to Call HSI

Fingerprint Examiner Mark Fitzgerald instead of Technician Pupo Perez. *See* Gov.'s Notice, ECF No. 113.

On February 8, 2023, the Court held a final pretrial conference. *See* Min. Entry, ECF No. 114.

On February 12, 2023, Mr. Patterson filed a motion *in limine* objecting to the testimony of Mr. Fitzgerald in so far as that testimony reference the analysis conducted by Thomas Liszkiewics. *See* Def. Mot. in Limine to Exclude References to Hearsay Material, ECF No. 115.

## II.    STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (internal citation omitted).

A court should only exclude evidence on motions *in limine* if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal citation and quotation marks omitted). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions are placed in the appropriate factual context. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 286–87 (S.D.N.Y. 1996).

### III.  DISCUSSION

The Government and Mr. Patterson, in their respective motions *in limine*, have each put

forth various arguments regarding the propriety of certain evidence being admitted or precluded

at trial.

On the same day the Government filed its motion *in limine*, it also filed its proposed

exhibit list, which included various exhibits related to an alleged 1997 deportation of Mr.

Patterson, in addition to an alleged 2000 deportation. *See* Government's Exhibit List, ECF No.

67 (Oct. 12, 2022); Amended Government's Exhibit List, ECF No. 111 (Feb. 8, 2023). In its

subsequent filing in connection with its motion *in limine*, the Government suggests that it may

rely on the alleged 1997 deportation and asserts that it is not required to prove beyond a

reasonable doubt that Mr. Patterson was deported after his 2000 felony conviction. *See* Gov.'s

Opp'n at 2 n.1.

Mr. Patterson objects to the Government's characterization of its burden at trial—

specifically, the Government's assertion that it is not required to prove beyond a reasonable

doubt that he was deported following his 2000 felony conviction. *See* Def.'s Mot. at 2–4.

Before turning to the parties' disputes over the propriety of the evidence being admitted

or precluded at trial, the Court first addresses an underlying issue: the scope of the charges here.

### A.  The Scope of the Charges

The indictment charges Mr. Patterson with violating 8 U.S.C. §§ 1326(a) and (b)(1):

> On or about June 12, 2019 in the District of Connecticut, the defendant GARFIELD
> ANTHONY PATTERSON, being an alien who had previously been deported and
> removed from the United States to Jamaica following a felony conviction in the
> State of Florida for (1) trafficking in cannabis in violation of Florida Statute
> § 893.135(1)(a)1 and (2) for being found in possession of an unlawfully issued
> driver's license in violation of Florida Statute § 322.212(1)(a), on or about February
> 15, 2000 in Broward County's Circuit Court, was found in the United States, that
> is, in Middletown, Connecticut, without first having obtained the express consent

of the Attorney General of the United States or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States.

Indictment at 1.

The text of 8 U.S.C. § 1326(b)(1)—the provision of the reentry statute that subjects a criminal defendant to the enhanced penalty, and under which Mr. Patterson is charged—reads in relevant part:

> any alien . . . whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both.

8 U.S.C. § 1326(b)(1).

Thus, to subject Mr. Patterson to the enhanced penalty under § 1326(b)(1), the Government must prove that the "removal was subsequent to a conviction for commission of . . . a felony." *Id.*; *see United States v. Covian-Sandoval*, 462 F.3d 1090, 1097 (9th Cir. 2006) ("In other words, to trigger the increase in the statutory maximum sentence under § 1326(b)(2), an alien must first be convicted of an aggravated felony, then be removed, and then attempt to reenter, in that order."); *United States v. Luna-Madellaga*, 315 F.3d 1224, 1226 (9th Cir. 2003) ("All that the statute requires is that the alien reenter the United States illegally after having been removed subsequent to an aggravated felony conviction. It plainly turns on the alien's *physical* removal—not the order of removal."). Our Constitution likewise requires the same. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

Mr. Patterson argues that the "indictment alleges that [he] . . . was deported and removed from the United States to Jamaica in 2000, and that he subsequently reentered the country at an unspecified date." Def. Mot. at 2–3. According to Mr. Patterson, the Government must therefore

prove, beyond a reasonable doubt that he "was removed after February 15, 2000 and that he subsequently reentered." *Id.* at 3.

The Government responds that Mr. Patterson "incorrectly frames the timing alleged in the indictment." Gov.'s Opp'n. at 2 n.1. In the Government's view, "[t]he indictment alleges Mr. Patterson was found in the United States on June 12, 2019." *Id.* Thus, with respect to the prior removal or deportation of Mr. Patterson—one of the four essential elements the Government concedes that it must prove beyond a reasonable doubt—its burden is to show "that prior . . . to June 12, 2019, [Mr. Patterson] had been deported or removed from the United States." *Id.* at 1.

In other words, in the Government's view, it need only prove that Mr. Patterson was removed or deported from the United States, irrespective of when that deportation occurred, so long as it was before June 12, 2019. According to the Government, any reference to the February 15, 2000 date in the indictment is simply meant to "alert Mr. Patterson to the enhanced maximum penalty he faces at sentencing," and is not meant to "establish the essential elements of the offense that government must prove beyond a reasonable doubt at trial." *Id.* at 2 n.1.

The Court disagrees.

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him." *United States v. Pirro,* 212 F.3d 86, 91 (2d Cir. 2000); *see United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) ("The Indictment Clause of the Fifth Amendment 'requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.'" (quoting *United States v. Abrams,* 539 F. Supp. 378, 384 (S.D.N.Y. 1982))); *see also United States v. De La Pava,* 268 F.3d 157, 162 (2d Cir. 2001) ("An indictment must

sufficiently inform the defendant of the charges against him and provide enough detail so that he may plead double jeopardy in a future prosecution based on the same set of events.").

The plain text of the indictment indicates that the deportation contemplated—and indeed identified—by this indictment is the one "following a felony conviction in the state of Florida." Indictment at 1. The indictment identifies Mr. Patterson as being an individual "who had previously been deported and removed from the United States to Jamaica following a felony conviction in the State of Florida." *Id.* The indictment therefore can fairly be interpreted to have put Mr. Patterson on notice that the alleged criminal conduct he is being prosecuted for is "being found in the United States," after having "previously been deported and removed from the United States to Jamaica following a felony conviction in the State of Florida." *Id.*; *see United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet . . . ."); *see also United States v. Pirro*, 212 F.3d at 92 ("[T]he requirement that the offense be stated . . . specifying in detail each element of the crime, was seen as providing assurance both that the grand jury understood what was necessary to establish an offense and that the courts did not engage in unanticipated extensions of the substance of the offense." (alteration in original) (quoting 2 Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure* § 19.2 at 436, 448–49 (1984))).

To accept the Government's interpretation, the Court must, in its initial reading of the indictment, ignore an entire clause—which states that Mr. Patterson's deportation was "following a felony conviction in the State of Florida for (1) trafficking in cannabis in violation of Florida Statute § 893.135(1)(a)1 and (2) for being found in possession of an unlawfully issued driver's license in violation of Florida Statute § 322.212(1)(a), on or about February 15,2000 in

Broward County's Circuit Court," Indictment at 1—because that clause, in the Government's view, is simply meant to "alert Mr. Patterson to the enhanced maximum penalty he faces at sentencing," and is not an "essential elements of the offense the government must prove beyond a reasonable doubt at trial." Gov.'s Opp'n. at 2 n.1.

To be clear, neither the Indictment Cause of the Fifth Amendment nor § 1326 requires the Government to specify or identify in the indictment the prior deportation in question. *See United States v. Mercedes*, 287 F.3d 47, 58 (2d Cir. 2002) (holding that "neither [§ 1326] nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment" (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998))). The Fifth Amendment and § 1326 do, however, require that the Government proves—beyond a reasonable doubt—that, *inter alia*, Mr. Patterson had previously been deported or removed. And to subject Mr. Patterson to an enhanced penalty under § 1326(b)(1), the Government must prove—beyond a reasonable doubt—that the specific deportation "was subsequent to a conviction for commission of . . . a felony." 8 U.S.C § 1326(b)(1); *see e.g.*, *United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1094 (9th Cir. 2007) (holding that § 1326(b)(2) "requires us to examine whether the district court correctly found that [a defendant] had been removed from the United States and that the removal occurred after his prior convictions for possession of marijuana for sale").

Accordingly, because the indictment alleges that Mr. Patterson's deportation occurred following his felony convictions, and the Government is seeking to subject him to the enhanced maximum penalty of 10 years under § 1326(b)(1), the Government must prove, beyond a reasonable doubt, that Mr. Patterson was deported following his conviction in 2000. *See Apprendi*, 530 U.S. at 490 ("[A]ny fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

Having addressed this underlying issue, the Court will now turn to the evidence that the Government may rely on at trial to prove its case, and the evidence that Mr. Patterson may rely on in his defense.

### B.  1996 and 1997 Records

Mr. Patterson asks this Court to exclude evidence pertaining to his criminal arrest charges and conviction from 1996 and 1997, and evidence from his alleged 1997 removal or deportation. Def.'s Mot. at 1.

The Court will address each of these requests in turn.

### 1.  Criminal Arrests, Charges and Convictions

Mr. Patterson claims that the Government intends to introduce evidence of his alleged "criminal arrests, charges, or convictions" from 1996 and 1997. Def.'s Mot. at 4. Specifically, Mr. Patterson explains that this evidence includes:

> (1) a 1996 arrest for possession of stolen property on which adjudication was withheld and Mr. Patterson was ordered to serve 2 years of probation and pay a $300 fine;
>
> (2) a 1997 arrest for larceny on which adjudication was withheld and Mr. Patterson was ordered to serve 2 years of probation;
>
> (3) a 1997 nonmoving traffic violation for which Mr. Patterson was sentenced to jail for 25 days in 1997;

*Id.*

According to Mr. Patterson, evidence regarding these offenses is both "irrelevant to the § 1326 offense with which he is charged and is more prejudicial than probative." *Id.* (citing Fed. R. Evid. 401; Fed. R. Evid. 403). In his view, these non-immigration-related offenses "only prove that [he] was previously charged or convicted of other crimes," and they do not "have any

tendency to make a material fact more or less probable as it pertains to motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." *Id.* at 5 (citing Fed. R. Evid. 404(b)(2)).

The Government focuses on the admissibility of immigration records from 1996 and 1997. *See, e.g.*, Gov.'s Opp'n. at 6 ("In this case, the documents relate[d] to both of Mr. Patterson's removals are direct evidence concerning to elements of the offense."); *id.* ("Moreover, the documents are probative of his identification as the person removed, and the basis relates to how long Mr. Patterson was barred from seeking permission to reapply for admission.").

Such generalized objections are insufficient to defeat a request to preclude specifically identified evidence. Here, the Government indicated to Mr. Patterson "that these records"— meaning records from disclosed discovery which include criminal arrest charges or convictions, *see* Def.'s Mot. at 4—"may be intrinsic to the charged offense or relevant to determine 'knowledge, intent, plan, or identity' (*Letter from Deborah Slater to Lillian Odongo, July 2, 2021*)." *Id.* at 1. Yet, in response to Mr. Patterson's request that these criminal offenses be excluded, the Government does not explain how these criminal offenses are relevant to determine "knowledge, intent, plan, or identity" in this case. *Id.*

Absent a meaningful objection from the Government, the Court concludes that Mr. Patterson's criminal arrests, charges, and convictions from 1996 and 1997 are not relevant to this case, and therefore not admissible. Even if the Court found this evidence relevant, it is nonetheless inadmissible under Federal Rules of Evidence 403. Criminal conduct that occurred more than 20 years ago offers little probative value with respect to the charged offense of illegal reentry, *see United States v. Garcia,* 291 F.3d 127, 136 (2d. Cir. 2002), while it "easily lends

itself to generalized reasoning about [Mr. Patterson's] criminal propensity and thereby

undermines the presumption of innocence," *United States v. McCallum*, 584 F.3d 471, 476 (2d

Cir. 2009).

Accordingly, the Government is precluded from introducing, at trial, evidence from Mr.

Patterson's 1996 and 1997 arrests, charges, and convictions, and the related motion *in limine* will

be granted. But this issue is subject to being revisited at trial, to the extent that Mr. Patterson

opens the door in either the questioning of the Government's witnesses, or in the presentation of

his own case.

### 2.   *1997 Immigration Records*

Mr. Patterson seeks to preclude the Government from introducing evidence "regarding

[his] alleged removal in 1997," which "includes evidence regarding a January 1997 arrest for

immigration without a visa and attempted entry by fraud." Def.'s Mot. at 2. According to Mr.

Patterson, this evidence is not relevant to the charged offense and any probative value that this

evidence may have "would be outweighed by its prejudicial effect on" him. *Id.*

In his view, the Government's burden is to prove, beyond a reasonable doubt, that he

"was removed after February 15, 2000 and that he subsequently reentered." *Id.* at 3. Mr.

Patterson argues that the fact that he was allegedly removed or deported in 1997—and the factual

and legal basis surrounding that deportation—is not probative of his alleged subsequent

deportation in 2000. *Id.*; *see also id.* at 13 ("The ground for or basis of any prior deportation is

irrelevant to the jury's determination in an illegal reentry case."). And neither does evidence of

an alleged 1997 deportation "serve any other permissible purpose, such as proving 'motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

accident,'" according to Mr. Patterson. *Id.* (quoting Fed. R. Evid. 404(b)(2)). For these reasons,

he argues, the Court should preclude the Government from introducing evidence of his alleged 1997 deportation.

The Government responds that the 1997 removal is "direct evidence concerning . . . elements of the [instant] offense." Gov.'s Resp. at 6. First, the Government argues, the alleged 2000 removal "is based on the reinstatement of the order of removal from 1997." *Id.* Second, the 1997 removal documents "are probative of [Mr. Patterson's] identification as the person removed," according to the Government. *Id.* Lastly, the Government adds that the "basis" of Mr. Patterson's 1997 removal "relates to how long Mr. Patterson was barred from seeking permission to reapply for admission." *Id.*

The Court disagrees.

As the Court noted, *supra* Section III.A, the indictment charges Mr. Patterson with "being found in the United States," after having been "previously deported . . . following a felony conviction in the State of Florida . . . or about February 15, 2000." Indictment at 1. The Government's burden is to show that Mr. Patterson was removed from the Untied Stated "following a felony conviction in the State of Florida." *Id.* An alleged removal from 1997 is not only irrelevant to this charge, but it also has little probative value with respect to his alleged deportation in 2000, which the Government must prove beyond a reasonable doubt.

Accordingly, the motion *in limine* with respect to the 1997 immigration records will be granted. But this issue is subject to being revisited at trial, to the extent that Mr. Patterson opens the door in either the questioning of the Government's witnesses, or in the presentation of his own case.

### C. 2000 Records

#### 1. Criminal Records

Mr. Patterson asks this Court to exclude evidence pertaining to his "conviction in 2000 for cannabis trafficking, possession of an unlawfully issued driver's license, and resisting an officer." Def. Mot. at 4. As he did with respect to the 1996 and 1997 criminal offenses, he argues that the 2000 "offenses are not of an immigration nature," and therefore not relevant under Federal Rules of Evidence 401. Def. Mot. at 5. In addition, he argues, allowing the Government to introduce "evidence of prior non-immigration offenses risks leading the jury to draw conclusions based on negative assumptions about Mr. Patterson or frustration regarding immigration generally." *Id.*

The Government's response focuses on the admissibility of the 1997 immigration records from 1996 and 1997. *See, e.g.*, Gov.'s Resp. at 6 ("In this case, the documents relate[d] to both of Mr. Patterson's removals are direct evidence concerning to elements of the offense."); *id.* ("Moreover, the documents are probative of his identification as the person removed, and the basis relates to how long Mr. Patterson was barred from seeking permission to reapply for admission."). The Government states: "These documents and records are the evidence that is most probative of the essential elements of the indicted offense. Limiting instructions can be used to confirm the evidence will only be used for the intended purpose."

The Court agrees, in part.

Because the Government's burden is to show that he was deported "following the felony conviction," Indictment at 1, his actual 2000 felony conviction is not relevant. Indeed, as the U.S. Supreme Court made clear in *Apprendi*: "Other than the fact of a prior conviction, any fact

that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

In other words, the jury does not need to decide, nor must the Government prove beyond a reasonable doubt, whether Mr. Patterson had previously been convicted in order for him to be subjected to an enhanced sentencing penalty here. *See United States v. Bonilla*, 618 F.3d 102, 112 (2d Cir. 2010) ("Clear legal precedent—Supreme Court precedent—dictates the defeat of [a] claim that a prior felony conviction must be pleaded, proved, or admitted to" in a § 1326 prosecution.); *United States v. Martinez-Gutierrez*, 391 F. App'x 43, 44 (2d Cir. 2010) (holding, "*Apprendi* does not require a jury finding to apply the 16–point enhancement for a prior aggravated felony" under § 1326(b)(2) (citing *United States v. Mercedes*, 287 F.3d 47, 58 (2d Cir. 2002))); *see also United States v. Snype*, 441 F.3d 119, 148 (2d Cir. 2006) ("[T]his exception preserved the holding . . . that, where a statute provides for an enhanced penalty based on a defendant's prior convictions, the fact of these convictions is a sentencing factor to be determined by the court rather than a jury.").

Accordingly, the motion *in limine* with respect to the facts surrounding Mr. Patterson's 2000 criminal offenses will be granted. But this issue is subject to being revisited at trial, to the extent that Mr. Patterson opens the door in either the questioning of the Government's witnesses, or in the presentation of his own case.

### 2.  *Immigration Records*

Mr. Patterson argues that "[t]he ground for or basis of any prior deportation is irrelevant to the jury's determination in an illegal reentry case." Def. Mot. at 7. According to Mr. Patterson, "Section 1326 does not distinguish between various grounds of deportation," and therefore, the Court should exclude the "factual or legal basis" of any alleged prior deportation. *Id.*; *see also id.*

(arguing that all the Government is required to prove under § 1326, "is that the person has been formally deported or removed from the United States, or even that [the person] left voluntarily while a removal order was outstanding").

Mr. Patterson next asks this Court to "find inadmissible any legal determinations and references to such findings made on the basis of administrative proceedings as to [his] alienage status." Def. Mot at 13. Specifically, Mr. Patterson identifies three documents from February 2000 which he objects to being admitted: "Notice of Intent/Decision to Reinstate Prior Order, Disc. 86"; "Warrant of Removal/Deportation, Disc. 106"; and "Warning to Alien Ordered Removed or Deported, Disc. 108." He argues that these documents are both irrelevant and prejudicial. *Id.* (citing Fed. R. Evid. 401; Fed. R. Evid. 403); *see also id.* at 14 ("The legal findings made in these administrative proceedings lacked the procedural protections afforded in criminal trials. Firstly, the standard of proof imposed in administrative proceedings is that of 'preponderance of the evidence' unlike the rigorous standard of 'beyond a reasonable doubt' required in a criminal case.")

In response, the Government argues that "[c]ourts have held that these documents are relevant, and together with other evidence, can be used to establish a defendant's alienage." Gov. Resp. at 12. It argues that "the government may rely on documents from an A-file to prove alienage if a jury is properly instructed on the reasonable doubt standard." *Id.* (quoting *United States v. Gutierrez-Salinas*, 640 F. App'x 690, 693 (9th Cir. 2016)).

The Court agrees.

Because these documents relate to Mr. Patterson's alleged 2000 deportation—an element the Court has found that the Government must prove beyond a reasonable double—and because

the documents are contained in his "A-file" and are therefore business records under Federal

Rules of Evidence 803(8), the Court will allow their introduction. *See infra* Section III.E.

Accordingly, the motion *in limine* to exclude this evidence will be denied.

### D.  2021 Larceny Convictions

The Government ask that Court permit it to introduce evidence from Mr. Patterson's

March 2019 larceny offense in Middletown, Connecticut.

Mr. Patterson objects.

The Court agrees.

The 2021 larceny convictions are not relevant to this case, and even if they were, any

probative value would be substantially outweighed by their potentially prejudicial effect on Mr.

Patterson's trial. That said, while the convictions themselves are not relevant, and thus will be

excluded, Mr. Patterson's statements to the Middletown Police officers, while he was in custody

there, regarding his immigration status are admissible, consistent with the Court's January 20,

2023 Ruling denying Mr. Patterson's motion to suppress. *See* Order, ECF No. 107.

Accordingly, the motion *in limine* with respect to the 2021 larceny convictions will be

granted, but Mr. Patterson's statements to the Middletown Police officers remain admissible, as

previously ruled on by the Court.

### E.  "A-File" and Fingerprint Cards as Business Records

The Government moves to have the documents from Mr. Patterson's "A-file admitted as

public records under Fed. R. Evid. 803(8), or, alternatively, as business records under Fed. R.

Evid. 803(6). The Government similarly moves to have Mr. Patterson's "fingerprint cards

containing [his] fingerprints . . . taken by law enforcement" admitted as public records under

Fed. R. Evid. 803(8), or, alternatively, as business records under Fed. R. Evid. 803(6). Gov.'s Mot. at 5.

The Government explains that these documents will be offered "to establish [Mr. Patterson's] identity, alienage, and prior deportations and removals from the United States." *Id.* at 4. It argues that documents from an "A-file" and fingerprints cards, are not testimonial. *Id.* at 8. The Government concedes that "the Second Circuit has not yet opined on this issue," but it notes that the court has "observed that 'numerous courts have held that warrants of deportation are nontestimonial and therefore admissible despite the Supreme Court's decision in *Crawford*." Gov.'s Opp'n at 10 (quoting *United States v. Harvey*, 746 F.3d 87, 90 n.2 (2d Cir. 2014)).

With respect to the fingerprint cards, Mr. Patterson argues that the Government has "not established that the fingerprint cards were made or kept in the course of the regularly conducted activity of a business." Def.'s Object to Mot. to Admit Fingerprint Cards at 1, ECF No. 77 (Oct. 13, 202). "In order to properly authenticate the fingerprint cards," he argues, "the government should provide the testimony of a custodian or other qualified witness." *Id.*

The Court disagrees in part.

Federal Rules of Evidence 803(6) requires that evidence admitted under this rule be "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling" Fed. R. Evid. 803(6)(b). This requirement, however, need not be satisfied only through the "testimony of a custodian," as Mr. Patterson suggests. Instead, the Government may show that this condition is satisfied "by a certification that complies with Rule 902(11)." Fed. R. Evid. 803(6)(b).

With respect to admission of the A-File under the business record exception, Mr. Patterson argues that "I-205 Warrants of Deportation/Removal and the expedited removal Form

I-296 . . . belong to the category of 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Def.'s Mot. at 9 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 305 (2009)). He argues that although the records "may be prepared in the ordinary course of government business, [they] primarily [are] prepared in preparation of future criminal prosecutions for illegal reentry." *Id.* at 9–10. Admitting these records without allowing Mr. Patterson to cross examine their custodians, would, in his view, "effectively abrogate the Confrontation Clause in immigration-related prosecutions." *Id.* at 10.

The Court disagrees.

As the Government rightly noted, "[n]umerous Courts of Appeal have held that such documents are non-testimonial in nature and their admission do not violate the Confrontation Clause." Gov. Resp. at 8 (citing *United States v. Garcia*, 887 F.3d 205, 213 (5th Cir. 2018) (holding that "warrants of removal are nontestimonial because they are not prepared specifically for use at . . . trial. They must be issued for cases resulting in a final order of removal, to memorialize an alien's departure—not specifically or primarily to prove facts in a hypothetical future criminal prosecution." (citing 8 C.F.R. § 241.2))).

Given this authority, *see, e.g.*, *United States v. Garcia*, 452 F.3d 36, 41–42 (1st Cir. 2006); *United States v. Valdez-Maltos*, 443 F.3d 910, 911 (5th Cir. 2006); *United States v. Cantellano*, 430 F.3d 1142, 1145 (11th Cir. 2005); *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1074–76 (9th Cir. 2005), the Court similarly finds that I-205 Warrants of Deportation/Removal and the expedited removal Form I-296 are not testimonial and the Government may introduce them at trial.

Accordingly, the motion *in limine* to exclude this evidence will be denied, although their admissibility will have to addressed further at trial.

### F.  Other Requests

#### 1.  Opening Statement

The Government requests permission to give openings statements in during trial. The Government explains that it anticipates that its evidence "will not [be] presented in a linear fashion" and its witnesses' testimony may not necessary be in "chronological order." Gov.'s Mot. at 2. In the Government's view, opening statements will "provide an efficient roadmap" and help orient the jury to what it expects to be "an evidentiary mosaic." *Id.*

Mr. Patterson objects to an opening statement in this case. *See generally* Notice of Def.'s Objection to Opening Statements, ECF No. 71 (October 12, 2022). He argues that "this is a one defendant trial," and "all of the evidence expected at trial will be limited to his alleged" illegal reentry. *Id.* at 2. In Mr. Patterson's view, "[t]here is simply no need to summarize the proposed evidence in advance in this case." *Id.*

The Court will reserve judgment on this issue.

As the Second Circuit has held, "the making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge" in criminal cases because there is no constitutional right for defendants in criminal cases to give opening statements at trial. *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983) (finding that there was no abuse of discretion where district court judge denied criminal defendant's request to have opening statements at his trial). Because the United States Constitution does not require that defendants in a criminal trial be given the opportunity to give opening statements, the Court exercises its discretion and denies the Government's motion to have opening statements in the trial of this case.

Of course, the parties are, however, free to confer and agree on a jointly stipulated statement regarding this case that the Court will read to the jury before the Government begins its presentation of its case.

But the Court will reserve judgment on this issue for now.

1. *Certificate of Non-Existence of Records and Reports of Fingerprint Technicians*

Mr. Patterson argues that the Certificates of Non-Existence of Records that the Government intends to introduce at trial are "testimonial" evidence and the Court should preclude their introduction at trial "unless the certifying clerk is produced for cross-examination." Def.'s Mot. at 8. The Government has now clarified that it "intends to call the individual who issued the certificate." Gov.'s Opp'n at 10.

Accordingly, the Court finds this request is moot.

Mr. Patterson likewise objects to the admission of reports from the fingerprint technician, absent "an opportunity to cross-examine the producing technician at trial." Def.'s Mot. at 10. The Government similarly explains that it "intends to call the fingerprint technician to testify as an expert at trial." Gov. Opp'n at 11. To the extent that the fingerprint technician that the Government will call intends to testify regarding that technician's own report, Mr. Patterson's testimonial rights concerns will be satisfied.

Mr. Patterson, on different grounds, objects to that technician also testifying as an expert in this case.

The Court addresses that objection next.

### 2.  *Expert Witness: Fingerprint Technician*

Mr. Patterson moves to exclude the expert testimony of fingerprint technician, America Pupo Perez, on the ground that the Government failed to meet its obligation under Federal Rules of Criminal Procedure 16(a)(1)(G)(III). *See generally* Perez Mot.; Perez Suppl. Mot. Specifically, Mr. Patterson argues that the government failed to timely disclose the expert to him and the Government failed to provide a "the bases and reasons" for the testimony. Perez Mot. at 2.

In sum, Mr. Patterson argues that the Government does not provide "the bases and reasons" for Ms. Perez to "testify that Mr. Patterson's fingerprints 'obtained from the defendant after his arrest in Middletown, Connecticut . . . and fingerprints that were recorded on documents relating to the defendant's prior removals or deportations . . . belong to the same person.'" *Id.* at 2; *see id.* at 2–3 (explaining that the Government asserts that three fingerprints—June 12, 2019 by Middletown Police; January 7, 2000 and April 15, 2000 taken during alleged removals— "'were made by the same individual,' despite the fact the three [fingerprints] were taken years apart by different agencies, none of which are listed on Ms. Pupo Perez's CV").

The Government has filed an amended expert notice indicating it "intends to elicit the testimony of a fingerprint examiner from the HSI Forensic Laboratory who performed fingerprint examinations in November 2022." Amended Expert Notice, ECF No. 113 (February 8, 2023).

Mr. Patterson objects to the testimony of this person, Mr. Kevin Fitzgerald, because Thomas Liszkiewicz, not Mr. Fitzgerald, is the expert who conducted the fingerprint analysis and authored the expert report that would be the subject of the testimony in this case. *See* Mot. to Exclude References to Hearsay Testimony, ECF No. 115 (February 12, 2023) ("Fitzgerald

Mot."). Mr. Patterson contends that "the report prepared by Mr. Liszkiewicz, like the reports

prepared in *Melendez-Diaz* and *Bullcoming* [*v. New Mexico*, 564 U.S. 647 (2011),] go 'straight

to the heart of the offenses for which the petitioners in those cases were respectively charged'—

i.e. whether Mr. Patterson had previously been removed from the United States." *Id.* at 2

(quoting *United States v. Williams*, 720 F.3d 674, 699 (8th Cir. 2013)). As such, he argues, the

report is "inherently testimonial in nature, and thus cannot be introduced unless Mr. Liszkiewicz,

having been qualified as an expert, testifies and is subject to cross examination." *Id.*

The Court disagrees, for now.

"[T]he Confrontation Clause entitles a criminal defendant to 'a meaningful opportunity to

cross-examine witnesses against him.'" *McCray v. Capra*, 45 F.4th 634, 646 (2d Cir. 2022)

(quoting *Alvarez v. Ercole*, 763 F.3d 223, 229–30 (2d Cir. 2014)), *cert. denied,* 143 S. Ct. 624

(2023). As a general matter, "forensic reports—even those prepared by analysts who purportedly

act as 'mere scrivener[s]' of machine-generated results—are testimonial statements that are

inadmissible without confrontation." *Garlick v. Lee*, 1 F.4th 122, 131 (2d Cir. 2021) (quoting

*Bullcoming*, 564 U.S. at 657), *cert. denied*, 142 S. Ct. 1189 (2022).

Mr. Patterson contends that the Supreme Court's ruling in *Bullcoming* precludes

testimony of Mr. Fitzgerald in so far as that testimony would include "previous fingerprint

analysis performed by non-testifying persons." Fitzgerald Mot. at 1. In *Bullcoming*, the Supreme

Court concluded that the Confrontation Clause does not "permit the prosecution to introduce a

forensic laboratory report containing a testimonial certification, made in order to prove a fact at a

criminal trial, through the in-court testimony of an analyst who did not sign the certification or

personally perform or observe the performance of the test reported in the certification."

*Bullcoming*, 564 U.S. at 647. There, the Court was concerned that "[t]he testimony of a surrogate

witness could not convey what the analyst who conducted the test 'knew or observed about the events his certification concerned, *i.e.*, the particular test and testing process he employed,' and could not 'expose any lapses or lies on the certifying analyst's part.'" *Garlick*, 1 F.4th at 132 (quoting *Bullcoming*, 564 U.S. at 661–62).

This concern, however, is not present in this case. First, unlike in *Bullcoming,* the expert report in question in this case includes a "Verification Worksheet" which contains Mr. Fitzegerald's name, accompanied by a notation of his initials, and identifies the "number of prints [he] verified." Gov.'s Proposed Exhibit 17 at 3. Second, Mr. Fitzgerald stated that he "concur[s] with [Mr. Liszkiewicz's] critical findings and conclusions." *Id.* In other words, not only is Mr. Fitzgerald able to "convey what [Mr. Liszkiewicz] knew of and observed" in conducting the analysis contained in the report, *Garlick*, 1 F.4th at 132 (quoting *Bullcoming*, 564 U.S. at 661–62), Mr. Fitzgerald verified the analysis and concurred in the conclusion, Gov.'s Proposed Exhibit 17 at 3.

Thus, because Mr. Patterson will have "ample opportunity to confront" Mr. Fitzgerald, who verified the fingerprint analysis in this case, and because Mr. Fitzgerald "was personally familiar with each of the prior steps" involved in the analysis, the Court concludes that "the Confrontation Clause is satisfied." *United States v. Boyd*, 686 F. Supp. 2d 382, 386 (S.D.N.Y.), *aff'd*, 401 F. App'x 565 (2d Cir. 2010).

Accordingly, the motion to exclude any testimony from Mr. Fitzgerald about the previous fingerprint analysis performed by Mr. Liszkiewicz is denied without prejudice to its renewal at trial on other grounds.[2]

---

[2] Mr. Patterson also argues that the Government "never noticed [Thomas Liszkiewicz] as a witness under Rule 702." Fitzgerald Mot. at 1. He contends that "[i]f the government wants to introduce Liszkiewicz's opinions, it could have filed the proper notice and sought his qualification as an expert." *Id.* at 2. The Court, however, need not decide this

### 3.  *Veracity of Government Witnesses*

Mr. Patterson requests that the Court direct the Government to "refrain from" asking him—should he choose to testify—and his witnesses, questions regarding the "regarding the veracity of the government witnesses." Def.'s Mot. at 13. The Government responds that it "has no intention of asking the defendant or defense witnesses such questions." Gov.'s Opp'n at 11.

Accordingly, the Court finds this request is moot.

The Government separately requests that "the Court preclude the defense from asking its own witnesses and Government witnesses similar questions about the veracity of other witnesses." *Id.* That requested in granted, absent objection from Mr. Patterson.

### 4.  *Reference to Mr. Patterson as "Alien"*

Mr. Patterson requests that Court instruct the Government and its witnesses to "refrain from referring to [him] as an 'alien'." Def.'s Mot. at 15. Because alienage is an element of the offence that the government must proof, according to the Mr. Patterson, "allowing such references would prejudice [him] . . . as it presents an inherent danger that the jury will defer its assessment of Mr. Patterson's alienage to the Government and its witnesses." *Id.* at 16.

In response, the Government mainly argues that the statute under which is Mr. Patterson is sued, § 1326, "uses the word 'alien,'" and various evidentiary documents do the same. Gov.'s Opp'n at 12. The Government adds that "the word alien in and of itself is not so prejudicial as to unduly influence the jury in its decision making." *Id.*

The Court agrees in part.

---

issue because Mr. Liszkiewicz is not called as an expert in this case. The Government's expert, Mr. Fitzgerald, was noticed under Rule 702. *See* Fitzgerald Mot. at 1 ("[The Government] offered notice under Rule 702 of Mr. Fitzgerald's planned testimony as an expert on fingerprint matching, along with a copy of his c.v. and a transcript of previous testimony on the subject in another trial."); *see also* Gov.'s Notice that the Government Intends to Call HSI Fingerprint Examiner Instead of Technician Pupo Perez, ECF No. 113 (Feb. 8, 2023).

The Government's assertion that various evidentiary documents as well as the text of the charge offense "explicitly uses the word 'alien,'" is not responsive to Mr. Patterson's objection. *Id.* Here, Mr. Patterson's objection is narrower; he simply asks that the Government and its witnesses not "refer to [him] as an alien [to avoid] depriv[ing] him of the presumption of innocence"—in this case, the presumption that he is not an alien—to which he is entitled. Def.'s Mot. at 15. In other words, his objection does nothing to preclude the Government from using the term "alien" in connection with the text of the statute or the evidence being presented that contains the word, "alien." Any such references are "not so prejudicial as to unduly influence the jury in its decision making." Gov.'s Resp. at 12.

But, apart from any use of the term, "alien," already contained in exhibits to be admitted at trial, Government witnesses should refrain any use of the term to describe Mr. Patterson.

Accordingly, this motion *in limine* will be granted in part, and denied in part, consistent with the Court's analysis above.

### 5. *Alleged Photographs of Mr. Patterson*

Lastly, Mr. Patterson requests that the Court preclude the Government from introducing a "number of photos which they will likely allege depict" him. Def.'s Mot. at 16. He argues that these photographs are offer "minimal probative value" while being "substantially prejudicial" to him. *Id.* As to the photographs' purported probative value, according to Mr. Patterson, the photographs are "in black-and-white and of extremely poor quality," and "[i]n many of these photos the facial features of the individual pictured are not even distinguishable." *Id.* As to the photographs' purported prejudicial effects, Mr. Patterson argues that "the general orientation of these photos tends to resemble mugshots." *Id.*

In response, the Government explains that it has now "provided the defense with color copies of these same photographs," Gov. Resp. at 13, thereby foreclosing any suggestion by Mr. Patterson that the photographs lack probative value. Next, the Government argues that the photographs "are not mugshots." Instead, according to the Government, these photographs "are primarily photographs taken near the time that he was [allegedly] deported and are affixed to the warrants of deportation/removal, as well as photographs on his passport, and photographs on other documents contained in the A-file." *Id.* In the Government's view, these "photographs are critical to proving that the person who was [allegedly] previously deported is the same person who [allegedly] illegally reentered and was found in the United States in 2021." *Id.*

The Court agrees.

An essential element of the crime is that Mr. Patterson was previously deported from the United States. The Government must therefore prove, beyond a reasonable doubt, that Mr. Patterson was, in fact, previously removed. To the extent that the Government has evidence—here photographs—identifying him as a person who was previously deported, that evidence is highly probative, and not unduly prejudicial.

Courts in this Circuit have excluded photographs that are mugshots taken by law enforcement. *See e.g.*, *Tirado v. Shutt*, No. 13-cv-2848 (LTS) (AJP), 2015 WL 6866265, at *7–8 (S.D.N.Y. Nov. 9, 2015) (excluding photographs because "the photographs are clearly mug shots taken by law enforcement authorities at different times and thus could lead jurors to draw adverse inferences concerning Plaintiff's character and criminal history. Redaction of references to the DOCCS or Plaintiff's DIN, height and weight would not effectively alleviate the unfairly prejudicial nature of these photographs, . . . whose probative value is minimal at best"). An assertion by the defense that "the general orientation of [a] photo[] tends to resemble mugshots,"

without more, may not be sufficient to exclude otherwise highly probative evidence. Def.'s Mot.
at 16.

Accordingly, the Court will reserve judgment until it reviews the photographs.

## IV.    CONCLUSION

For the foregoing reasons, the Government's motion *in limine* is **GRANTED in part** and
**DENIED in part** without prejudice to renewal.

Mr. Patterson's motion *in limine* is **GRANTED in part** and **DENIED in part** without
prejudice to renewal.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of February, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE