## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

GARFIELD PATTERSON.

No. 3:21-cr-103 (VAB)

## RULING AND ORDER ON MOTION FOR A JUDGMENT OF ACQUITTAL OR A NEW TRIAL

Garfield Patterson ("Defendant" or "Mr. Patterson") has been charged with reentry by a noncitizen who was previously removed from the United States, in violation of 8 U.S.C. § 1326. *See* Indictment, ECF No. 1 (June 15, 2021). After two days of trial, a jury found Mr. Patterson guilty of the crime charged.

Mr. Patterson has now filed a motion for a new trial, or in the alternative, a motion for an acquittal. *See* Def.'s Mot. for Judgment of Acquittal or New Trial, ECF No. 145 (Apr. 10, 2023) ("Mot."). The Government opposes the motion. *See* Government's Mem. in Opp'n to Mot., ECF No. 149 (May 8, 2023) ("Opp'n").

For the following reasons, Mr. Patterson's motion for a judgment of acquittal, or for a new trial is **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In light of the Court's prior written orders in this case, the Court assumes the parties' familiarity with the factual and procedural background and includes only facts and events relevant to this Ruling. *See* Order on Motions *in Limine* at 2–4, ECF No. 117 (Feb. 15, 2023).

According to the allegations of the indictment, Mr. Patterson is a noncitizen who was convicted in February 2000 in Florida state court of cannabis trafficking and possession of an

unlawfully issued driver's license. *See* Indictment at 1, ECF No. 1. Following these convictions, Mr. Patterson was allegedly deported to Jamaica. *Id.* "[H]aving previously been deported and removed from the United States to Jamaica following [the] felony conviction in the State of Florida," Mr. Patterson was allegedly present in Middletown, Connecticut, in June 2019 without having first obtained the express consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States. *Id.*

 Mr. Patterson pleaded not guilty to the charges in the indictment and proceeded to trial.

 On February 23, 2023, after two days of trial, the jury found Mr. Patterson guilty of reentry by a noncitizen who was previously removed from the United States, in violation of 8 U.S.C. § 1326.

 During their deliberation, the jury sent a question to the Court which read: "We are debating on the issue of a flight. Is there rules in place back in 2000 to current that travel documents are to be included in A-Files, past and present cases." Transcript of Trial at 309:5-8, ECF No. 146 ("Tr."). Outside of the presence of the jury, the Court read to the parties its proposed response to the jury's question which was as follows: "a properly executed warrant of deportation, coupled with testimony regarding the deportation procedures followed at that time, is sufficient proof that a defendant was, in fact, physically deported from the United States. It is for you as the jury, however, to determine whether or not the government in this case has met its burden beyond a reasonable doubt to prove that this happened here." *Id*. at 309:22–310:5. Mr. Patterson objected to the Court's proposed response. The Court denied Mr. Patterson's objection and in response, Mr. Patterson moved for a mistrial, which the Court also denied.

 On April 10, 2023, Mr. Patterson filed a motion for a judgment of acquittal, or in the alternative, a new trial. *See* Mot.

On May 8, 2023, the Government filed an opposition to Mr. Patterson's motion. *See* Opp'n.

On May 11, 2023, Mr. Patterson filed a response to the Government's opposition. *See* Def.'s Reply, ECF No. 150 ("Reply").

## II.   STANDARD OF REVIEW

### A.  Motion for a New Trial

Rule 33 allows the court to "grant a new trial to [a] defendant if the interests of justice so require." Fed. R. Crim. P. 33. Under Rule 33, the trial court has "broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). In deciding such a motion, courts may weigh the evidence and the credibility of witnesses but cannot "wholly usurp" the role of the jury. *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000). Accordingly, the power to set aside a jury verdict "should be used 'sparingly' and only 'in the most extraordinary circumstances.'" *United States v. Zayac*, No. 3:09–cr–00136 (JCH), 2011 WL 5238823, at *2 (D. Conn. Nov. 1, 2011) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)).

The court also "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *Ferguson*, 246 F.3d at 134. "The ultimate test . . . is whether letting a guilty verdict stand would be a manifest injustice." *Id.* To grant the motion, "[t]here must be a real concern that an innocent person may have been convicted." *Id.* (internal quotation marks omitted).

### B.  Judgment of Acquittal

When reviewing a judgment of acquittal, courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"A court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (alteration and internal quotation marks omitted) (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)). A defendant challenging the sufficiency of the evidence thus "bears a heavy burden." *United States v. Si Lu Tian*, 339 F.3d 143, 150 (2d Cir. 2003) (internal quotation marks omitted).

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson,* 335 F.3d 170, 180 (2d Cir. 2003). Under this standard, the court "may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010) (quoting *United States v. MacPherson*, 424 F.3d 183, 187 (2d Cir. 2005)). A court must "defer to the jury[ the] assessment of witness credibility and . . . resolution of conflicting testimony." *United States v. Bala*, 236 F.3d 87, 93–94 (2d Cir. 2000). In sum, "[t]he government's case need not exclude every possible hypothesis of innocence," *United States v. Martinez,* 54 F.3d 1040, 1042–43 (2d Cir. 1995) (internal quotation marks omitted), and where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter," *Guadagna*, 183 F.3d at 129 (internal citation and quotation marks omitted) (alteration in original).

At the same time, the Court is also mindful of its responsibility to protect Defendants' Fifth Amendment rights. *See, e.g.*, *United States v. Valle*, 807 F.3d 508, 513 (2d Cir. 2015). If

courts "are to be faithful to the constitutional requirement that no person may be convicted

unless the Government has proven guilt beyond a reasonable doubt, we must take seriously our

obligation to assess the record to determine . . . whether a jury could *reasonably* find guilt

beyond a reasonable doubt." *Id.* at 515 (alteration in original) (quoting *United States v. Clark*,

740 F.3d 808, 811 (2d Cir. 2014)). In particular, "specious inferences are not indulged, because it

would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty.

If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal

circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must

necessarily entertain a reasonable doubt." *Id.* (quoting *United States v. Lorenzo*, 534 F.3d 153,

159 (2d Cir. 2008)).

## III.   DISCUSSION

In his motion, Mr. Patterson moved for a judgment of acquittal, or in the alternative, a

new trial. Before turning to Mr. Patterson's request for a new trial, the Court will first address

whether he has provided sufficient basis for the Court to decide his request for a judgment of

acquittal under Rule 29.

Although Mr. Patterson asserts that he is entitled to a judgment of acquittal under Rule

29, his brief is largely focused on an allegedly erroneous jury instruction. In fact, Mr. Patterson

dedicates only a page to his argument for a judgment of acquittal, which focuses entirely on the

purported erroneous jury instruction. *Compare* Mot. at 4–12 (arguing that he is entitled to a new

trial on the basis of the Court's allegedly erroneous instructions), *with id.* at 13 (arguing that he is

entitled to a judgment of acquittal on the basis of the Court's allegedly erroneous instructions).

Mr. Patterson provides no legal authority for the proposition that an erroneous jury

instruction provides a basis for a judgment of acquittal under Rule 29. As the Government noted

in its opposition, Mr. Patterson's reliance on the Supreme Court's decision in *Middleton v. McNeil*, 541 U.S. 433 (2006) is misplaced. *See* Opp'n at 9 ("While defendant Patterson has moved, pursuant to Rule 29 for judgment of acquittal, his argument centers on a jury instruction that was given by this court in response to the jury's note."). In *McNeil*, the question was whether, in the context of a habeas review, an alleged faulty jury instruction violated the due process clause by failing to instruct jurors that that the state must prove every element of the charged offence. *See McNeil*, 541 U.S. at 437 (explaining that "[i]n a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement").

Because Mr. Patterson provides no factual or legal basis for his entitlement to a judgment of acquittal under Rule 29, the Court will deny that request. *Cf. United States v. Capers*, 20 F.4th 105, 128 (2d Cir. 2021) (holding that "[t]he proper remedy [for erroneous jury instruction] is not to dismiss the charge, but to remand for further proceedings, including a new trial if the government chooses to pursue the count further").

The Court will next turn to whether Mr. Patterson is entitled to a new trial under Rule 33 on the basis of the allegedly erroneous jury instruction.

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011). When reviewing whether a particular instruction is erroneous, the Second Circuit has explained the jury charge must be "viewed as a whole." *United States v. Quinones*, 511 F.3d 289, 314 (2d Cir. 2007). Indeed, "[o]ften isolated statements taken from the charge, seemingly prejudicial on their face, are not so when viewed in the context of the entire record of the trial." *Id.* (quoting *United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir.1990)). To be entitled to a new

trial on the basis of an alleged erroneous jury instruction, a defendant must not only establish that the instruction was, in fact, erroneous, but that the defendant also suffered a prejudice as a result. *See United States v. Wiley*, No. 3:21-CR-98 (JBA), 2022 WL 17736914, at *1 (D. Conn. Dec. 16, 2022) ("When seeking a new trial based on the jury instructions, the Defendant must show both 'error and ensuing prejudice.'" (quoting *Quinones*, 511 F.3d at 313–14)).

Here, during their deliberations, the jury sent a note to the Court asking: "Is there rules in place back in 2000 to current that travel documents are to be included in A-Files, past and present cases." Tr. at 309:5-8.

In response to this question, and over Mr. Patterson's objection, the Court instructed the jury as follows:

> THE COURT: I'm going to provide this answer for you. A properly executed warrant of deportation, coupled with testimony regarding the deportation procedures followed at the time, is sufficient proof that a defendant was, in fact, physically deported from the United States. That said, as I have said, it is for the jury to determine whether the government has met its burden of proof in this case with respect to the evidence that was presented in this case.

*Id*. at 321:5–14.

Mr. Patterson objected to the Court's inclusion of the following: "A properly executed warrant of deportation, coupled with testimony regarding the deportation procedures followed at the time, is sufficient proof that a defendant was, in fact, physically deported from the United States." *Id.* at 321:6–10. Mr. Patterson argues that this phrase "is not in fact a correct statement of the law." Mot. at 9. Although he concedes that that phrase was a verbatim recitation of the Second Circuit's holding in *United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014), *see* Mot. at 10 (conceding that "[t]he Court recited the words of Harvey"), he argues that the phrase was "taken out of context," *id.* at 8. In his view, to properly contextualize this phrase, the Court had

to use the words "can" or "could" instead of "is" in that sentence. *Id.* In other words, in his view, the correct rendition should have been: "A properly executed warrant of deportation, coupled with testimony regarding the deportation procedures followed at the time, [can/could be] sufficient proof that a defendant was, in fact, physically deported from the United States." *Harvey*, 746 F.3d at 89.

Finally, Mr. Patterson argues that the Court's alleged error "was clearly prejudicial" to him. Mot. at 10. In his view, the nature of the jury's question "clearly indicated that the jury was struggling with the quantum of proof needed to prove" the deportation of element of the offense. *Id.* Because the jury returned with a guilty verdict shortly after this instruction, he concludes that the Court's instruction indicated to the jury that "that they already had all the proof they needed" to convict him. *Id.* at 11.

In response, the Government argues that Mr. Patterson failed to show "any circumstances" that would warrant a new trial under Rule 33. Opp'n at 10. It argues that the Court's supplemental instruction "was a correct statement of the law," *id.*, which "clarified to the jury . . . what can suffice to prove the element of deportation," *id.* at 13. Moreover, the Government argues, the Court's response to the jury's question provided a "a legal framework . . . to the jury to alleviate any confusion sown by the defense's own closing argument." Opp'n at 11. Finally, the Government argues that "given the evidence admitted at trial . . . there should be no concern that the 'the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice,' . . . nor is there any 'real concern that an innocent person may have been convicted.'" *Id.* at 14 (first quoting *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003); and then quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001).

The Court agrees.

Here the Court provided, verbatim, the Second Circuit's guidance in *Harvey* on the evidence sufficient to establish the element of deportation under 8 U.S.C. § 1326. *Compare Harvey* 746 F.3d at 89 ("[A] properly executed warrant of deportation, coupled with testimony regarding the deportation procedures followed at that time, is sufficient proof that a defendant was, in fact, physically deported from the United States.") *with* Tr. 321:6–10 ("A properly executed warrant of deportation, coupled with testimony regarding the deportation procedures followed at the time, is sufficient proof that a defendant was, in fact, physically deported from the United States.").

Mr. Patterson cannot challenge the Court's recitation of the Second Circuit's exact language as inaccurate—because it was not. Instead, he argues that to be an accurate statement of the law, the Court had to amend the Second Circuit's exact language for the jury and replace the word "is" with "can" or "could." But as the Second Circuit has made clear, "[n]o particular form of words is required," in a jury instruction, "so long as taken as a whole the instructions correctly convey the required legal principles." *United States v. Ganim*, 510 F.3d 134, 142 (2d Cir. 2007) (citation and internal quotation marks omitted).

Moreover, this instruction properly clarified the law as to the Government's obligation to maintain certain specific records, such as flight details and travel documentation, in light of Mr. Patterson's counsel's suggestion to the contrary. *See* Tr. 290:9–17 ("What happened in February 28th of 2000? What happened in April? Was he removed? Did he depart? Did the departure happen? If the departure happened, why is there not a travel packet in the A-File for you to see or the itinerary? . . . If that flight happened, where is the manifest of that flight to show that this is the passenger that took that flight and left?"). As the Court noted, "to some extent," this "argument is somewhat misleading" and the Court didn't "want the jury to be misled about"

what was legally required of the government to prove its case. *Id.* at 319:16–24.

By using the precise language relied upon by the Second Circuit in *Harvey* to articulate the proper legal standard , the Court sought to provide "an intelligible and accurate portrayal of the applicable law." *Ganim*, 510 F.3d at 142. And to ensure that the use of this precise language did not usurp the jury's role as the finders of fact, the Court concluded this instruction by stating: "as I have said, it is for the jury to determine whether the government has met its burden of proof in this case with respect to the evidence that was presented in this case." Tr. at 321:11–14.

Thus, "[t]aken as a whole," the Court's supplemental instructions "provided the jury with an intelligible and accurate portrayal of the applicable law." *Ganim*, 510 F.3d at 142. Mr. Patterson provides no factual or legal basis for this Court to conclude that he suffered a "a miscarriage of justice," as required under Rule 33, to warrant a new trial.

Accordingly, the Court will deny his motion.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Patterson's motion for a judgment of acquittal, or for a new trial is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of August, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE